# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 9, 2016 Session

## ATHENA OF S.C., LLC ET AL. V. JAMES F. MACRI, JR. ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-4-15     Deborah C. Stevens, Judge**

---

## No. E2016-00224-COA-R3-CV-FILED-OCTOBER 14, 2016

---

The plaintiffs sued an attorney for legal malpractice related to the enforcement of two promissory notes. The plaintiffs purchased these notes, which were secured by property at a real estate development, from the two other defendants in this lawsuit. During the purchase of these notes, the sellers were represented by the defendant-attorney in this lawsuit. Subsequently, the plaintiffs hired the same attorney to help them collect the amounts due under the notes from the real estate developer. The attorney drafted a complaint and an agreed judgment for each of the promissory notes and filed these documents in the Circuit Court for Knox County. The circuit court entered the agreed judgments the same day they were filed. When the plaintiffs attempted to sell the property that secured the promissory notes, the real estate developer's former business partner filed a motion for an injunction in federal court. The federal district court issued two injunction orders, one in May 2012 and one in August 2012. Both orders were based on findings that the transaction by which the plaintiffs acquired the promissory notes was likely fraudulent. On January 6, 2014, the parties who sold the notes to plaintiffs filed an affidavit that, according to the plaintiffs, admitted that the sale of the notes to plaintiffs was fraudulent. On January 6, 2015, the plaintiffs filed this action against their former attorney and the parties that sold them the promissory notes. The attorney filed a motion to dismiss under Tenn. R. Civ. P. 12.02(6), arguing that the plaintiffs' claim was time barred because it accrued in August 2012. The trial court granted this motion because it determined that the plaintiffs knew they had suffered an injury when the district court issued the second injunction order in August 2012. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Mark E. Brown, Knoxville, Tennessee, for the appellants, Athena of S.C., LLC and Ted Doukas.

Darryl G. Lowe, Knoxville, Tennessee, for the appellee, Gregory D. Shanks d/b/a Shanks and Blackstock.

**OPINION**

The plaintiffs in this action are Ted Doukas and Athena of S.C., LLC (collectively referred to hereinafter as "Plaintiffs").[1] This appeal arises from the dismissal of their legal malpractice claim against their former attorney, Gregory D. Shanks.

In 2011, Ted Doukas negotiated an agreement with Tennessee Land and Lakes, LLC ("TLL") and James F. Macri, Jr., pursuant to which his limited liability company, Athena, would acquire two promissory notes that were owned at the time by SunTrust Bank.[2] The notes to be acquired by Athena were secured by a deed of trust covering 120 lots and 11 condominiums in a real estate development called "Rarity Bay." The debtors on the notes were two business entities owned by real estate developer Michael Ross. Pursuant to the agreement, Mr. Doukas and Athena made a down payment of $230,000 to Mr. Macri and TLL, who then purchased the notes from SunTrust Bank for over $1,500,000. After acquiring the notes, Mr. Macri and TLL assigned the notes (hereinafter "Rarity Bay notes") to Athena in consideration for Plaintiffs' payment of the balance of the purchase price with interest to Mr. Macri and TLL. Gregory D. Shanks, the defendant in this appeal, was the attorney for Mr. Macri and TLL in each of these transactions.

In the interim, Mr. Macri and TLL acquired for themselves a promissory note associated with Rarity Enclave, another of Mr. Ross's real estate developments. Mr. Shanks also represented Mr. Macri and TLL in this transaction.

After acquiring the Rarity Bay notes from Mr. Macri and TLL, Plaintiffs hired Mr. Shanks to help them collect on the notes. As part of this process, Mr. Shanks prepared two complaints and two agreed judgments, each against Mr. Ross and one of his business entities. Mr. Shanks filed these complaints and judgments in the Circuit Court for Knox County on November 30, 2011, and the circuit court entered the agreed judgments that same day.

During this time, Mr. Ross and many of his companies were defendants in a lawsuit that Mr. Ross's former business partner, Robert T. Stooksbury, Jr., had filed in the United States Court for the Eastern District of Tennessee. In September 2011, a federal magistrate judge issued an order recommending that the district judge enter a

---

[1] Mr. Doukas is the owner and principal of Athena of S.C., LLC.

[2] Mr. Macri was the owner and principal of Tennessee Land and Lakes, LLC.

default judgment against Mr. Ross. *Stooksbury v. Ross*, No. 3:09-CV-498, 2011 WL 5834015, at \*7 (E.D. Tenn. Sept. 28, 2011), *report and recommendation adopted in part, rejected in part,* No. 3:09-CV-498, 2011 WL 5833878 (E.D. Tenn. Nov. 21, 2011). Although the district court rejected this part of the magistrate judge's recommendation in November 2011, it later entered a default judgment against Mr. Ross in favor of Mr. Stooksbury in January 2012. *See Stooksbury v. Ross*, No. 3:09-CV-498, 2012 WL 262888, at \*4 (E.D. Tenn. Jan. 30, 2012).

In May 2012, Plaintiffs published a notice of foreclosure for the 11 condominiums that secured the Rarity Bay notes. In response, Mr. Stooksbury filed a motion to enjoin the sale in federal court. Among other things, he asserted that Mr. Ross entered the agreed judgments with Athena "after the magistrate judge recommended default be granted in this case, without adequate consideration and for the purpose of defrauding [Mr. Stooksbury] as a creditor." *See Stooksbury v. Ross*, No. 3:09-CV-498, 2012 WL 1933802, at \*3 (E.D. Tenn. May 29, 2012). Athena made a special appearance in federal court to oppose Mr. Stooksbury's motion. *Id.* at \*4.

On May 29, 2012, the district court entered an order that enjoined the foreclosure sale until a receiver could be appointed. *Id.* at \*7. In relevant part, the district court's order stated:

> *The Court also finds [Mr. Stooksbury] has shown that it is likely the assignment of the Deed of Trust to Athena is fraudulent.* While on its face the Deed of Trust appears legitimate, the Court finds it must consider the assignment, and the timing of the assignment, in light of the various transfer of assets from defendants to Athena and other entities controlled by Mr. Doukas. [Mr. Stooksbury] has submitted multiple documents into the record that raise a strong inference that defendants are fraudulently transferring property and assets to Mr. Doukas and the entities he owns, including Athena. In making this determination, the Court has considered, among other documents, . . . *the agreed judgments filed on the same day as the complaints on promissory notes and guarantees Athena asserted against certain defendants in state court . . . .*

*Id.* at \*5 (emphasis added).[3]

In July 2012, Plaintiffs published a notice of foreclosure for the 120 lots that secured the Rarity Bay notes, and Mr. Stookbury filed a motion to enjoin the sale in

---

[3] In the district court's order, the term "Deed of Trust" refers to the document that granted a security interest in some of the real property in Rarity Bay. *See Stooksbury v. Ross*, No. 3:09-CV-498, 2012 WL 1933802, at \*4 (E.D. Tenn. May 29, 2012).

federal court. The district court granted Mr. Stooksbury's motion and enjoined the sale on August 1, 2012. The district court stated:

> the Court finds [Mr. Stooksbury] has shown that it is likely the proposed foreclosure of the Rarity Bay Lots relates to the series of transactions and conveyances the Court found likely to be fraudulent in the [May 29, 2012] Injunction Order. . . . [Mr. Stooksbury] has submitted the notice of substitute trustee sale relating to the Rarity Bay Lots which notes that a deed of trust was assigned by SunTrust Bank to [TLL] on October 6, 2011, and was subsequently assigned by [TLL] to Athena on November 28, 2011 . . . . While Athena has filed, in support of its response, documentation relating to these transactions, the Court has previously considered most of these documents and other related records pertaining to the transactions between Athena and the judgment debtors [i.e. Mr. Ross and several of his business entities] in this case and found that the series of transactions and conveyances raised a strong inference that such transactions and conveyances were fraudulent.

*Stooksbury v. Ross*, No. 3:09-CV-498, 2012 WL 12841901, at *4 (E.D. Tenn. Aug. 1, 2012).

On January 6, 2014, Mr. Macri and TLL settled a claim involving the Rarity Enclave property with the receiver appointed by the district court. As part of the settlement Mr. Macri submitted an affidavit that, according to Plaintiffs, admitted that the sale of Rarity Bay notes to Athena was fraudulent.

One year later, on January 6, 2015, Plaintiffs filed this suit against Mr. Macri, TLL, and Mr. Shanks, asserting claims of fraud and interference with business relationships against Mr. Macri and TLL and claims of legal malpractice against Mr. Shanks. Specifically, Plaintiffs alleged that Mr. Shanks had committed legal malpractice by preparing and entering two agreed judgments that were rendered worthless after Mr. Macri filed the January 2014 affidavit. In relevant part, the complaint states:

> 75. As a result of the injunctions, Athena was faced with rising costs on its collateral including damage to the condominiums and real property taxes, all while seeing the value of its collateral decrease.
>
> . . . .
>
> 93. [Plaintiffs] sue the Defendant Shanks for liability for negligence in the performance of his professional duties as an attorney retained by Doukas and Athena. Specifically, [Plaintiffs] allege that Shanks undertook a duty to represent them according to the applicable standard of care for

attorneys within the State of Tennessee. [Plaintiffs] allege that Shanks breached that duty of care by preparing and entering two (2) Agreed Judgments on behalf of [Plaintiffs], which were the result of the sale of Sun Trust [sic] notes to [Plaintiffs] from another of Shanks' clients Macri and Tennessee Land. That sale has been conceded by Macri and Tennessee Land to be fraudulent rending [sic] the Agreed Judgments prepared by Shanks as worthless and as a result, Shanks has fallen below the applicable standard of care for an attorney licensed in the State of Tennessee. As a result [Plaintiffs] have been damaged in the amount of [$7,727,800.13], representing the total amount of the Agreed Judgments, plus pre-judgment and post-judgment interest, all of which are the direct and proximate result of Shanks' actions or inactions in their [sic] representation of [Plaintiffs].

Mr. Shanks filed a motion to dismiss Plaintiffs' legal malpractice claim under Tenn. R. Civ. P. 12.02(6), arguing that the claim was barred by the one-year statute of limitations for legal malpractice claims because it accrued when the federal court entered the injunction orders in May and August of 2012. The trial court granted this motion and dismissed the malpractice claim, stating:

[T]here is no question that the Plaintiffs suffered a loss of a legal[ly] cognizable right when they were enjoined from foreclosing on the eleven (11) condominiums by the District Court Order of May 23, 2012 and at the latest, when the District Court enjoined the foreclosure of the Rarity Bay lots on August 1, 2012. Both of the Orders specifically reflect that the foreclosures are based on a series of transactions "that appear to be fraudulent". . . . For the purpose of the statute of limitations in the subject Complaint, the Plaintiffs were prevented from foreclosing and according to their complaint began to suffer damages when the District Court enjoined the foreclosure in May and August of 2012.

The Plainitff[s] further assert[] that the statute did not run until the affidavit was signed by Mr. Macri on January 6, 2014 allegedly admitting that the underlying action was fraudulent. "Fraudulent activity" or "fraudulent intent" in the [Rarity Bay] notes is exactly what was at issue when the United States District Court for the Eastern District of Tennessee at Knoxville issued injunctions in 2012 to stop the impending foreclosure. . . . For purposes of determining when the Plaintiff[s] had knowledge of the injury, it is not necessary that the District Court issued a

final judgment or issued a ruling finding fraud in the underlying transaction.[4]

The trial court further found that Mr. Macri's affidavit did not admit that there was fraud related to the sale of the Rarity Bay notes. According to the trial court, "a close reading" of the affidavit revealed that it was discussing fraud related to the Rarity Enclave transaction rather than the sale of the Rarity Bay notes.

The trial court certified its order as a final judgment under Tenn. R. Civ. P. 54.02, and Plaintiffs appealed.

## STANDARD OF REVIEW

Filing a motion to dismiss under Tenn. R. Civ. P. 12.02(6) is "an appropriate way to seek to invoke the statute of limitations as grounds for dismissing a complaint." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 455 n.11 (Tenn. 2012). The review of a trial court's decision to grant a motion to dismiss under Tenn. R. Civ. P. 12.02(6) involves a question of law, which we review de novo with no presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894-95 (Tenn. 2011). A motion to dismiss challenges only the legal sufficiency of the complaint. *See id.* at 894; *Webb v. Nashville Area Habitat for Humanity*, 346 S.W.3d 422, 426 (Tenn. 2011). When considering such a motion, courts must construe the complaint liberally, presume all its factual allegations to be true, and give the plaintiff the benefit of the inferences that can reasonably be drawn from the pleaded facts. *See Webb*, 346 S.W.3d at 426; *421 Corp. v. Metro. Gov't of Nashville & Davidson Cty.*, 36 S.W.3d 469, 479 (Tenn. Ct. App. 2000).

## ANALYSIS

Plaintiffs contend that the trial court's "close reading" of Mr. Macri's affidavit converted Mr. Shanks' motion to a motion for summary judgment and that they should have been allowed to submit additional evidence. Plaintiffs also argue that their

---

[4] Although the trial court's order states that the district court issued the order enjoining the sale of the 11 condominiums on May 23, 2012, that order was not entered until May 29, 2012. The district court made an oral ruling on May 23 and entered its written order on May 29. *See Stooksbury v. Ross*, 2012 WL 1933802, at *1. Additionally, on May 23, 2012, a federal magistrate judge issued an order that, *inter alia*, prohibited Mr. Ross and his business entities from concealing, assigning, or removing any money pending the appointment of a receiver. *See Stooksbury v. Ross*, No. 3:09-CV-498, 2012 WL 12842528, at *5 (E.D. Tenn. May 23, 2012). Like the district court judge's two injunction orders, the magistrate's May 23 order contained findings that conveyances involving Athena were likely meant to conceal Mr. Ross's assets or remove them "from the reach of [Mr. Stooksbury's] judgment." *See id.* at *4.

malpractice claim against Mr. Shanks was timely because it did not accrue until Mr. Macri filed an affidavit on January 6, 2014. We will address each argument in turn.

## I. TREATMENT OF MR. MACRI'S AFFIDAVIT

A motion to dismiss under Tenn. R. Civ. P. 12.02(6) "shall be treated" as a motion for summary judgment when "matters outside the pleading are presented to and not excluded by the court . . . ." *See* Tenn. R. Civ. P. 12.02. However, exhibits attached to the pleadings are considered to be part of the pleadings, and a court resolving a motion to dismiss may consider such exhibits without converting the motion into a motion for summary judgment. *See Ivy v. Tenn. Dept. of Correction*, No. M2001-01219-COA-R3-CV, 2003 WL 22383613, at *3 (Tenn. Ct. App. Oct. 20, 2003). Courts may also consider matters that the complaint incorporates by reference, items subject to judicial notice, orders, and matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Indiana State Dist. Council of Laborers v. Brukardt*, No. M2007-02271-COA-R3-CV, 2009 WL 426237, at *8 (Tenn. Ct. App. Feb. 19, 2009) (quoting Wright and Miller, *Federal Practice and Procedure, Civil* § 1357, p. 376 (3d ed. 2004)).

Plaintiffs do not contend that the trial court erred by considering Mr. Macri's affidavit, which Plaintiffs themselves attached to the complaint. Instead, Plaintiffs argue that the trial court was required to consider Mr. Macri's affidavit as part of the pleadings, taking all its allegations as true and construing it liberally in Plaintiff's favor. According to Plaintiffs, the trial court failed to adhere to this standard when it conducted a "close reading" of the affidavit.

After reviewing the record, it appears that the trial court simply read Mr. Macri's affidavit and accepted it at face value. However, for purposes of this appeal we will assume that, as Plaintiffs allege, Mr. Macri's affidavit does admit that the transaction by which Plaintiffs acquired the Rarity Bay notes was fraudulent.

## II. ACCRUAL OF PLAINTIFFS' LEGAL MALPRACTICE CLAIM

Plaintiffs contend that their malpractice claim against Mr. Shanks was timely filed because it did not accrue until Mr. Shanks filed his affidavit on January 6, 2014.

The statute of limitations in legal malpractice actions is one year from the time the cause of action accrues. Tenn. Code Ann. § 28-3-104(c)(1). The accrual of a legal malpractice action is determined by applying the discovery rule. *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 540 (Tenn. Ct. App. 2012) (quoting *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)). In this context, the discovery rule is concerned with two components: an actual injury and knowledge. *See John Kohl & Co.*, 977 S.W.2d at 532. As the Supreme Court has stated:

- 7 -

In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct.

*Id.* (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 28-30 (Tenn. 1995)).

"It is not necessary that the injury become irremediable for purposes of the limitations period; rather it must be a 'legally cognizable' or 'actual' injury." *Hartman v. Rogers*, 174 S.W.3d 170, 173 (Tenn. Ct. App. 2005) (citing *Carvell*, 900 S.W.2d at 29-30)). An actual injury occurs "when there is a loss of a legal right, remedy or interest, or the imposition of a liability." *Cardiac Anesthesia Servs.*, 385 S.W.3d at 541 (quoting *John Kohl & Co.*, 977 S.W.2d at 532). "An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer some actual inconvenience, such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Id.* (internal quotation marks omitted).

A plaintiff may have either actual or constructive knowledge of an injury. *John Kohl & Co.*, 977 S.W.2d at 532. Actual knowledge exists when, for example, "the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice." *Id.* In contrast, constructive knowledge exists "whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *Id.* "[T]here is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard." *Id.* at 533 (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998)). Furthermore, plaintiffs may not delay filing suit until all the injurious effects of the alleged wrong are actually known to them. *Id.* (quoting *Carvell*, 900 S.W.2d at 29).

Before we begin our analysis of the accrual issue, we find it necessary to acknowledge a dearth of specific factual allegations in the complaint that explain how Mr. Shanks breached his duty to Plaintiffs or how his breach of a duty caused the agreed judgments to become worthless. Complaints must contain more than recitations of legal elements. *See Morris Properties, Inc. v. Johnson*, No. M2007-00797-COA-R3-CV, 2008 WL 1891434, at *1 (Tenn. Ct. App. Apr. 29, 2008) (quoting *Lee v. State Volunteer Mut. Ins. Co., Inc.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005)). Instead, complaints must allege facts that, if true, support the elements of a cause of action. *See id*. Failure to do so results in dismissal, even under the liberal standard used to assess Rule 12 motions to dismiss. *See Lee*, 2005 WL 123492, at *10-11

(affirming the dismissal of a claim for tortious interference with a contract because the complaint contained no factual allegations that supported the elements of breach or proximate cause); *Conley v. State*, 141 S.W.3d 591, 597 (Tenn. 2004) (dismissing a claim for medical malpractice because the plaintiff did not allege any factual details supporting the alleged malpractice or any facts that would establish a "professional/client" relationship).

Here, the complaint does not allege that the agreed judgments became worthless because of an error Mr. Shanks made when he drafted and filed them. The complaint also does not allege that Mr. Shanks filed the agreed judgments despite his actual or constructive knowledge that the sale of the Rarity Bay notes was tainted by fraud. The complaint does allege that Mr. Macri's affidavit "rend[ered] the Agreed Judgments prepared by Shanks as worthless and as a result Shanks has fallen below the applicable standard of care . . . ." However, nothing in the complaint indicates that Mr. Shanks was responsible for or had anything to do with the filing of that affidavit. The complaint does not state that Mr. Shanks drafted or filed Mr. Macri's affidavit. Although the complaint states that Mr. Shanks represented Mr. Macri and TLL during the sale of the Rarity Bay notes, it does not allege that Mr. Shanks represented Mr. Macri or TLL when they settled the claim with the receiver. Indeed, the complaint does not even allege that Mr. Shanks encouraged or advised Mr. Macri to file the January 2014 affidavit.

Plaintiffs' reply brief perhaps comes closest to articulating the allegation that is absent from the complaint. The reply brief states that Mr. Shanks "seeks to use a legal technicality to avoid the fact that he has advised one client to take some action—executing an Affidavit—that caused harm to another client." The complaint itself does not contain any such allegation, and we cannot supply it ourselves. *Chism v. Mid-S. Milling Co., Inc.*, 762 S.W.2d 552, 555 (Tenn. 1988) ("When the Court is dealing simply with allegations of pleadings, . . . the Court is not free to construct additional facts or allegations."), *superseded by statute on other grounds*. Without an allegation similar to the statement contained in Plaintiffs' reply brief, Plaintiffs' complaint does very little to allege facts that support the assertion that Mr. Shanks breached his duty to Plaintiffs or caused the agreed judgments to become worthless.

The foregoing notwithstanding, our analysis of the accrual issue based on the facts that the complaint alleges or incorporates by reference is as follows. With respect to Mr. Shanks, the complaint alleges two relevant injuries. First, paragraph 75 alleges that Athena suffered injuries including rising costs on the collateral and damage to the condominiums "[a]s a result of the injunctions . . . ." Second, paragraph 93 alleges that Mr. Macri's sworn statement that the Rarity Bay transaction was fraudulent "rend[ered] the Agreed Judgments prepared by Shanks as worthless and as a result, Shanks has fallen below the applicable standard of care . . . ."

To the extent that Plaintiffs' claim against Mr. Shanks is based on the injuries alleged in paragraph 75, their claim accrued well before January 2014. The injunction orders were issued in May and August of 2012, and both orders contained findings that the transaction involving the Rarity Bay notes was likely fraudulent. As the trial court noted, Plaintiffs knew they had suffered this injury by August 2012 at the latest.

Plaintiffs contend that the injuries alleged in paragraph 75 are irrelevant to their claim against Mr. Shanks. According to Plaintiffs, the injunction-related injuries cannot be the basis of their claim against Mr. Shanks because those injuries were not caused by the breach of a duty that Mr. Shanks owed to them. That is, because Mr. Shanks was not Plaintiffs' attorney during the sale of the Rarity Bay notes, the injuries caused by Mr. Shanks' actions or inactions during that time cannot be the basis of Plaintiffs' legal malpractice claim.

The only other alleged injury that is relevant to Plaintiffs' malpractice claim is the injury alleged in paragraph 93. This injury is Plaintiffs' inability to enforce the agreed judgments entered by the Circuit Court for Knox County. Plaintiffs contend that this injury did not occur until Mr. Macri filed his affidavit. On appeal, Plaintiffs state their argument on this point as follows:

> It is only when the Plaintiffs learned that the Agreed Judgments prepared and filed by [Mr. Shanks] became worthless that they suffered harm and the clock began ticking on their claims. . . . That occurred at the earliest on January 6, 2014 when [Mr. Shanks'] other clients Macri and [TLL] filed an Affidavit as part of settling their dispute with the Federal Court Receiver which, arguably indicated that the entire transaction between Macri and [TLL] and Doukas and Athena in which Doukas and Athena received an assignment of the [Rarity Bay notes], and from which [Mr. Shanks] prepared the Complaints and Agreed Judgments on behalf of the Plaintiffs, was fraudulent.

According to Plaintiffs, Mr. Macri's sworn statement that the sale of the Rarity Bay notes was fraudulent caused the agreed judgments to become worthless. If Mr. Macri's affidavit caused the agreed judgments to become worthless because it contained statements that the Rarity Bay transaction was fraudulent, then the federal district court's orders would have had an identical or similar effect. Both orders contained findings that the sale of the Rarity Bay notes was likely fraudulent. Because, as Plaintiffs themselves note, the agreed judgments were based on this sale, findings that the sale was likely fraudulent would certainly call the agreed judgments into question, make it more difficult to enforce them, and thus lower their value. Indeed, the May 2012 injunction order specifically states that the district court considered "*the agreed judgments filed on the same day as the complaints on promissory notes* and guarantees Athena asserted against certain defendants in state court" when it determined that the sale of Rarity Bay notes

was likely fraudulent. *See Stooksbury v. Ross*, 2012 WL 1933802, at \*5 (emphasis added).

Mr. Macri's affidavit may have provided a stronger indication that Plaintiffs had suffered an injury regarding the agreed judgments. It may also have increased the magnitude of Plaintiffs' injury or given them notice of additional injurious effects of the negligence they have alleged in the complaint. However, Plaintiffs cannot delay filing suit until all the injurious effects of the alleged wrong are actually known to them. *John Kohl & Co.*, 977 S.W.2d at 533; *Shadrick*, 963 S.W.2d at 733. As the trial court correctly noted, fraudulent activity in the sale of the Rarity Bay notes was the subject of both the district court's orders and Mr. Macri's affidavit. Information about the fraudulent nature of the Rarity Bay transaction was available to Plaintiffs in May and August of 2012. If the disclosure of such information caused the agreed judgments to become worthless, then Plaintiffs knew or should have known of this injury in August 2012 at the latest. Therefore, whether Plaintiffs' claim is based on the injunction-related injuries or the injuries associated with the agreed judgments, the claim accrued on August 2012 at the latest.

For the reasons stated above, we affirm the trial court's decision to dismiss the malpractice claim against Mr. Shanks.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Athena of S.C., LLC and Ted Doukas.

_____
FRANK G. CLEMENT, JR., P.J., M.S.